**SO ORDERED.**

**SIGNED this 10 day of September, 2015.**

_____
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| GABRIEL LEVAR JACKSON and MONTE NICOLE JACKSON, | 15-01915-5-SWH |
| DEBTORS | |

### ORDER DENYING MOTION TO DISMISS

The matter before the court is the Bankruptcy Administrator's motion to dismiss this chapter 7 case for abuse pursuant to 11 U.S.C. § 707(b)(1), which turns on two competing interpretations of § 707(b)(2) and Official Form 22A-2, and the propriety of the debtors' means test deductions on Lines 9 and 13 of that form. The Bankruptcy Administrator ("BA") argues that the debtors may deduct only their actual housing and vehicle expenses or the applicable National or Local Standards, whichever is less. Under this view, the presumption of abuse would arise and require dismissal of the case. The debtors counter that their deduction of the standardized IRS allowances in both categories was appropriate, notwithstanding the fact that their actual costs are lower.

A hearing was held in Raleigh, North Carolina on August 7, 2015. After full consideration, and for the reasons set forth below, the court concludes that the debtors' use of the IRS Local

Standard allowances for their housing and vehicle exemptions on Form 22A-2 comports with both the plain language of and the rationale behind § 707(b).  The motion to dismiss will be denied.

### FACTUAL AND PROCEDURAL BACKGROUND

The debtors, Gabriel Levar and Monte Nichole Jackson, filed a petition under chapter 7 of the Bankruptcy Code on April 6, 2015.  Because the Jacksons qualify as above-median income debtors (their current monthly income, as calculated and annualized on Form 22A-1, is higher than the median family income for a family of four in North Carolina), they were required to complete the "Chapter 7 Means Test Calculation" set out in Form 22A-2.[1]  The parties have stipulated that the debtors' calculation of their current monthly income is correct, and that with the exception of the deductions at issue (claimed on Lines 9c and 13c), all other deductions taken on Form 22A-2 are correct.  Further, the BA and debtors agree that the debtors "completed the Amended Means Test according to the instructions contained on Official Form 22A-1 and 22A-2."[2]  Joint Stipulations of Fact at ¶ 6 (DE 29).

The debtors were required by Form 22A-2 to take certain standard deductions, according to instructions provided in the form:

> The Internal Revenue Service (IRS) issues National and Local Standards for certain expense amounts.  Use these amounts to answer the questions in lines 6-15.  To find the IRS standards, go online using the link specified in the separate instructions for this form.  This information may also be available at the bankruptcy clerk's office.

---

[1] The BA and debtors' counsel did a stellar job of coordinating their efforts to isolate the dispositive issues and concisely present the stipulated facts, and the court commends them for their professionalism.

[2] The crux of the BA's argument, and the rationale behind some courts' rulings, is that the instructions provided in Official Form 22A-2 are inconsistent with the statutory provisions the form is intended to implement.

>Deduct the expense amounts set out in lines 6-15 *regardless of your actual expense. In later parts of the form, you will use some of your actual expenses if they are higher than the standards.* Do not deduct any amounts that you subtracted from your spouse's income in line 3 and do not deduct any operating expenses that you subtracted from income in lines 5 and 6 of form 22A-1.

Form 22A-2 at 2 (emphasis by the court).

The form requires deduction of expenses for some categories (food, clothing, and other items; out of pocket health care allowances) according to the IRS National Standards, while other categories reflect IRS Local Standards, including those at issue here. Specifically, Lines 8 and 9 require that debtor deduct the Local Standard amount for a Wake County family of four for insurance and home operating expenses (Line 8) and for mortgage or rent expenses (Line 9). And, Lines 11 through 15 pertain to transportation and vehicle expenses, again requiring use of the Local Standards. Line 13 provides: "Vehicle ownership or lease expense: Using the IRS Local Standards, calculate the net ownership or lease expense for each vehicle below. You may not claim the expense if you do not make any loan or lease payments."

The debtors complied with these instructions, and completed the form as follows:

>Pursuant to § 707(b)(2)(A)(ii)(I), the Jacksons deducted $1,548.00 on Line 9a because that is the mortgage or rent expense for a family of four in Wake County, North Carolina and $517.00 on both lines 13a and 13d because the Jacksons make loan payments for two vehicles. Pursuant to § 707(b)(2)(A)(iii), the Jacksons deducted $870 for their average monthly mortgage payment to Wells Fargo for their home on Line 9b. ... Line 9c directs debtors to subtract their average monthly loan payment of $870.00 on Line 9b from the mortgage or rent allowance of $1,548.00 deducted on Line 9a, which results in a net mortgage or rent expense of $678.00.
>
>Pursuant to § 707(b)(2)(A)(iii), the Jacksons deducted $111.00 on line 13b for the average monthly payment made towards the loan secured by the Jacksons' 2003 Chevrolet Tahoe and $90.50 on Line 13e for the average monthly payment made towards the loan secured by the Jacksons' 2008 Dodge Magnum. ... Additionally, on Lines 13c and 13f, the Jacksons are instructed to take the net vehicle ownership or

3

>   lease expense, which results in a deduction of $406.00 on Line 13c and $426.50 on Line 13f.

Debtors' Mem. of Law in Opp. to BA's Mot. to Dismiss at 14-15 (DE 32) (hereinafter "Debtors' Mem.").

Again, there is no dispute with respect to whether the Jacksons accurately interpreted and complied with the requirements of Form 22A-2; the BA readily agrees that they did so. Nor is there any pending question whether the totality of the debtors' financial circumstances demonstrate that relief under Chapter 7 would constitute an abuse, the BA having stated that absent the development of unforseen circumstances, she does not intend to pursue dismissal under § 707(b)(3). The sole question before this court is whether, as the BA contends, a chapter 7 debtor completing the Means Test is required to deduct the Local Standards *or* their actual expenses, *whichever is less*, notwithstanding the form's instructions to the contrary. In this case, that would require the Jacksons to replace their housing deduction of $678 with a deduction of $0, and their vehicle deductions of $406.00 and $426.50 with a deduction of $0. This would in turn give rise to a presumption of abuse, necessitating either dismissal of the case or its conversion to a case under chapter 13.

With these established facts in mind, the court turns to the statutory and policy-based underpinnings of both parties' arguments.

## DISCUSSION

The starting point is 11 U.S.C. § 707(b)(1), which provides in relevant part that the court "may dismiss a case filed by an individual debtor under this chapter . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter." The statute goes on to establish the "means test" in § 707(b)(2), which provides, in relevant part, as follows:

4

(2)(A)(i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income *reduced by the amounts determined under clauses (ii), (iii), and (iv)*, and multiplied by 60 is not less than the lesser of–

    (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $7,475, whichever is greater; or

    (II) $12,475.

(ii)  (I) *The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards*, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent.  Such expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor.  *Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts* . . . .

* * *

(iii)  The debtor's average monthly payments on account of secured debts shall be calculated as the sum of–

    (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the filing of the petition; and

    (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;

    divided by 60.

(iv) The debtor's expenses for payment of all priority claims (including priority child support and alimony claims) shall be calculated as the total amount of debts entitled to priority, divided by 60.

11 U.S.C. §§ 707(b)(2)(A)(i)-(iv) (emphasis added).

### I.    Positions of the Parties and Precedential Value of Chapter 13 Cases

#### A.    Bankruptcy Administrator's Position

As the BA acknowledges, the "previously near universal interpretation of 11 U.S.C. § 707(b)(2) . . . permitted a debtor to claim the full amount of applicable deductions under the IRS's

5

National and Local Standards on their Means Test regardless of whether the debtor's applicable expenses were lower than the amounts provided in the standards." Mem. in Support of BA's Mot. to Dismiss at 2 ¶ 5 (DE 31) (hereinafter "BA's Mem."). However, she argues, a new line of cases emerging in the wake of the Supreme Court's holding in *Ransom v. FIA Card Services*, including cases within this district, calls this interpretation into question. *Id.* (citing *Ransom v. FIA Card Services*, 562 U.S. 61, 131 S. Ct. 716 (2011)). In particular, the BA cites *In re Harris*, 522 B.R. 804 (Bankr. E.D.N.C. 2014) (where debtor's vehicle ownership expense is less than the amount allowed by the IRS Local Standard, the debtor may claim only the lower, actual expense) and *In re Fields*, 534 B.R. 126, 2015 WL 1546209 (Bankr. E.D.N.C. 2015), which holds that "[w]hen the National and Local Standards are applicable, debtors shall be limited to deducting their actual expenses or the applicable Standard, whichever is less." *Fields*, 534 B.R. at 140.

In *In re Wilkerson*, for example, the bankruptcy court held that where an above-median income chapter 13 debtor's actual home ownership and transportation expenses were substantially less than the amounts listed in the IRS Standards, the debtor could claim only her lower, actual expenses for means test purposes, rather than the standard allowance. Pointing out that the *Ransom* court "expressly declined to reach the question of what amount the debtor could claim as a deduction if the debtor did, in fact, incur an expense in the relevant category but in an amount less than provided for in the relevant IRS Standard," the court elected to side with *Harris* and other decisions arriving at the conclusion that "an expense amount is only 'applicable' to a debtor to the extent it is actually incurred, with the IRS Standard serving merely as a cap to the amount of the deduction a debtor may claim." *Wilkerson*, 2015 WL 3935259 (Bankr. D. Dist. Col. 2015), *citing Harris*, 522 B.R. 804 (Bankr. E.D. N.C. 2014); *In re Daniel*, 2012 WL 3322438 (Bankr. M.D. Ala 2012).

More recently, in *In re Fields*, a chapter 13 case from this district, Judge Warren concluded that a chapter 13 debtor with home mortgage and vehicle loan obligations could not claim housing or vehicle expenses at all. *Fields*, 534 B.R. at 132. Instead, relying in large part on the "notwithstanding" sentence found in 11 U.S.C. § 707(b)(2)(A)(ii), he concluded, the "calculations under the National and Local Standards are only appropriate when a debtor has an applicable payment that is not in the form of a secured debt (such as a lease payment). Whenever the National and Local Standards are applicable, the Standard operates a cap on the deduction a debtor may take, and if a trustee can show that actual expenses are lower, a debtor will be limited to the actual amount." *Id.* Noting (as did the *Harris* court) that this interpretation of § 707 is at odds with the calculations required by Official Form 22C, the court concluded that Form 22C unfortunately does not comply with the language of the statute. *Id.*

Consistent with this line of reasoning, the BA concludes, the debtors may deduct nothing for home and vehicle ownership expenses on lines 9 and 3 of Form 22A-2. The BA does acknowledge that there is considerable existing authority to the contrary, and also that these cases are emerging in the context of chapter 13, not chapter 7. Still, she reasons, the court "must, regardless of the application, adopt one interpretation of 11 U.S.C. § 707(b)(2)(A)," and she believes the emerging "no deduction" or "actual expenses only" cases to be on the right side of the divide.

**B.     Debtors' Position**

On the other hand, the debtor argues that both *Ransom* and Official Form 22A are entirely consistent with long-established interpretations of the statute, such that the debtors may claim their net housing and vehicle ownership expenses (i.e., the amount remaining after deducting their average monthly mortgage and lease payments from the IRS Local Standard amounts, as required

7

on Form 22A). The debtors choose to focus on that form, and make the following points with respect to it:

> 2. The content of Official Form 22A provides that a debtor's current monthly income is reduced by the amounts determined under clauses (ii), (iii), *and* (iv) of 11 U.S.C. § 707(b)(2)(A). 11 U.S.C. § 707(b)(2)(A)(i).
>
> 3. The instructions for Official Form 22A properly integrate the relationship between 11 U.S.C. § 707(b)(2)(A)(ii) and 11 U.S.C. § 707(b)(2)(A)(iii) in order to properly calculate the Jacksons' income.
>
> 4. As provided by Lines 9 and 13 of Official Form 22A-2, the Jacksons' monthly expenses "*shall be* the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards ... issued by the Internal Revenue Service." 11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added). Therefore, a deduction under the standards is *applicable* if the Jacksons have costs corresponding to the category covered by the Standards. *Ransom v FIA Card Services, N.A.*, 131 S. Ct. 716, 724 (2011).
>
> 5. Here, the Jacksons make monthly mortgage payments for their home and monthly car payments for two vehicles. As a result, the Jacksons' applicable monthly expense for mortgage or rent is $1,548.00 for a household of 4 in Wake County, North Carolina on Line 9a; and, the Jacksons' applicable monthly expenses for their vehicle Ownership Costs is $517.00 per vehicle on Lines 13a and 13d.
>
> \*\*\*
>
> 7. Additionally, the statute states that "[n]otwithstanding any other provision of this *clause*, the monthly expenses of the debtor shall not include any payments for debts." Id. (emphasis added). This provision means that the Jacksons are permitted to deduct the IRS's standard expense allowance under clause (ii) of 11 U.S.C. § 707(b)(2)(A) regardless of whether their actual payments for debts are less.
>
> 8. Since the Jacksons' current monthly income is to be reduced by clauses (ii), (iii), *and* (iv) of 11 U.S.C. § 707(b)(2)(A), the Jacksons properly deducted their average monthly payments made on behalf of the debts secured by their home and two vehicles on Lines 33a, 33b, and 33c pursuant to 11 U.S.C. § 707(b)(2)(A)(iii).

Debtors' Resp. in Opp. to Mot. to Dismiss at 1-2 (DE 20). Based on the foregoing, the debtors conclude that by offsetting their actual mortgage and vehicle expenses (the "debts" to which § 707(b)(2)(A)(ii)(I) refers) against the applicable IRS Local Standard amounts provided for

"Housing and utilities: Mortgage or rent expenses" and "Vehicle ownership or lease expense," they have both properly construed and fully complied with every provision of the means test.

With respect to cases cited by the BA interpreting the "notwithstanding" sentence to preclude debtors from claiming applicable standard deductions for housing or vehicle expenses if they have secured debts in those categories, the debtors argue that this view negates the purpose for which the means test was established.  *See Ransom*, 562 U.S. at 70 (noting that "Congress intended the means test to approximate the debtor's reasonable expenditures on essential items"); *In re Briscoe*, 374 B.R. 1, 11 (D.D.C. 2007) ("The use of fixed amounts under National and Local Standards relieves the court of the obligation to make largely subjective judgments regarding what is a reasonable expense.").  Nor does the form allow any "double dipping": Because Form 22A deducts debtors' expenses for mortgages and vehicle loans from the standard allowances (Lines 9c, 13c, and 13e), those secured debts are factored only *once* into the means test equation – as "average monthly payments on account of secured debts" under *clause (iii)* of § 707(b)(2)(A), meaning they are excluded from the applicable monthly expense amounts a debtor "shall" claim under clause (ii). The point of the "notwithstanding" sentence, the debtors emphasize, is simply to require the subtraction of certain debts (i.e., actual amounts owing) from the standardized monthly expenses of the debtor *addressed in clause (ii)*, because those payments are accounted for elsewhere.  Under the new line of cases, they conclude, the underlying functionality of "a standardized formula like the means test," which is by its nature both "over- and under-inclusive," is defeated.  *Ransom*, 562 U.S. at 78.

### C.     **Applicability of *Ransom* and Chapter 13 Cases**

Before embarking on its own discussion, the court confirms its agreement with a position shared by both sides: The rationale underlying the *Ransom* Court's discussion of expenses a debtor

9

may claim under the IRS National and Local Standards in the context of payments toward a vehicle loan or lease, applies with equal force in the context of expenses attributable to housing, including payments towards a home mortgage or rent. As was recently observed by Judge Stocks in *In re McGhee*, "the word 'applicable' as used in section 707(b)(2)(A)(ii)(I) should be applied in the same manner whether the deduction involves the ownership cost of a motor vehicle or the mortgage/rent component of the housing allowance." *In re McGhee*, 2013 WL 5299500 *1 (Bankr. M.D.N.C. 2013). Quoting with approval a bankruptcy case out of Ohio, the court wrote:

> To conclude otherwise would require this Court to afford the term "applicable" as used [in] § 707(b)(2)(A)(ii)(A) a different meaning, dependent upon whether, under the Local Standards, a deduction was being utilized for the cost of acquiring a residence or, instead, was being utilized as [a] deduction attributable to the cost to own a vehicle. There is nothing in the Court's decision in *Ransom* to suggest that such a distinction should be made or that the Court's holding in *Ransom* should be given such a narrow reading. To the contrary, the Court in *Ransom* supported its decision by reference to other supporting principles which apply regardless of whether one is addressing the ownership/acquisition costs (or lack thereof) of a vehicle or a residence.

*Id.* at *2, quoting *In re Sturm*, 483 B.R. 312, 324 (Bankr. N.D. Ohio 2012) (construing *Ransom*, 562 U.S. 61)).

Further, while the means test analysis required by § 707(b)(2) applies on its face to chapter 7 cases, the "applicable monthly expense amounts specified under the National Standards and Local Standards," as well as "the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses" are part of the means test analysis for above-median income chapter 13 debtors as well. 11 U.S.C. § 1325(b)(3). The court can perceive of conceptual differences in the purposes of the means test as between Chapters 7 and 13, but the statutory language of § 707(b)(2) remains the same, so chapter 13 cases discussing that language are instructive in the chapter 7

context as well.[3]  *See, e.g.*, *Ransom*, 562 U.S. 61; *Johnson v. Zimmer*, 686 F. 3d 224 (4th Cir. 2012) (chapter 13 case discussing applicability of § 707(b)(2)(A)(ii)(I) means test); *see also In re Wilson*, 454 B.R. 155 (Bankr. D. Co. 2011) (finding *Ransom* Court's decision in context of chapter 13 vehicle ownership expense deduction controlling in context of chapter 7 home or mortgage expense deduction).

## II.     Discussion by the Court

The starting line for the court's analysis is, of course, the language of the statute. That language being set out above, along with the parties' conflicting interpretations of it, this court will pick up precisely where they leave off:  The court agrees completely with the arguments advanced by the debtors, and believes that the emerging line of cases cited by the trustee goes too far afield from both the language and purpose of § 707(b)(2)(A)'s provisions. *See Johnson v. Zimmer*, 686 F.3d 224, 238 n.12 (4th Cir. 2012) (citing *Ransom*, and observing that "in requiring above-median debtors to use the means test to assess their 'amounts reasonably likely to be expended,' the BAPCPA moved away from permitting such debtors to claim their actual expenses and toward

---

[3] A recent case out of the bankruptcy court for the Eastern District of Virginia provides an excellent overview of the different purposes of the means test as used in chapter 13 versus chapter 7.  The § 707(b)(2) means test is "mechanical" and "looks to a debtor's hypothetical budget," the court wrote, meaning that "[b]asically, it blends uniform allowance expenses taken from the National Standards and Local Standards prepared by the Internal Revenue Service with contractual loan payments and various other modification," and therefore is a "straight-forward, bright-line" test.  In § 707(b)(3), Congress provided a "second test," which "looks at the debtor's actual post-petition income and expenses" and thus "seeks to distinguish debtors who could pay their creditors in whole or in part and direct them to chapter 13, from those who cannot and may enter chapter 7."  *In re Denzin*, ___ B.R. ___, 2015 WL 4666023, *2-3 (Bankr. E.D. Va. 2015).

requiring them to use a more standardized amount"). In the court's view, there is nothing in *Ransom* to indicate that a chapter 7 debtor with secured debts for housing and vehicle ownership costs is excluded from claiming applicable IRS Local Standard housing and vehicle expenses under the means test. Rather, the decision is both consistent with and supportive of the overall purposes of the means test as well as long-established interpretation of § 707(b)(2)(A) embodied in Official Form 22A, which this court believes to be correct.

A relatively recent bankruptcy court decision out of the Southern District of Illinois covers all these bases, and is worthy of examining at length. In *In re Scott*, 457 B.R. 740 (Bankr. S.D. Ill. 2011), the chapter 13 trustee moved to dismiss under § 707(b) where (as in the instant case) above-median-income debtors sought to claim their full standardized vehicle deductions, although their actual payments were lower.[4] Relying on the "notwithstanding" sentence, the trustee in *Scott* sought to disallow "standard expense deductions for anything that could be considered a debt." *Id.* at 744. The court disagreed.

> Turning first to Official Form B22C, the court made a number of telling points:
>
> Form B22C was created by the Judicial Conference of the United States in October 2005, after passage of BAPCPA. ... It was drafted by the Conference to assist practitioners in calculating disposable income. The Court views this as an advisory opinion as to how § 707(b)(2)(A)(ii)(I) should be interpreted. In this regard, lines 28 and 29 specifically direct the debtor to subtract their actual monthly car payment from the I.R.S. Standard, presumably because these payments aren't expenses–they're debts. The debtor then adds his monthly vehicle payment back into the calculation at line 47, where they are told to include debt payments. Intricate as it may be, the approach of the Judicial Conference on Form B22C gives effect to the entire statute.

---

[4] By "full," the court means the amount remaining after the debtors' average monthly vehicle payments were deducted from the IRS Local Standard amount in accord with the applicable Official Form, just as the debtors did in the instant case. At issue in *Scott* was Official Form B22C, which is the chapter 13 counterpart to chapter 7's Official Form 22A.

*Id.* In a footnote, the court elaborated further, noting that the authority of the Conference to devise the forms comes from 11 U.S.C. § 331, and finally that pursuant to Rule 9009 of the Federal Rules of Bankruptcy Procedure, "the Official Forms prescribed by the Judicial Conference of the United States shall be observed and used with alterations as may be appropriate.... The forms shall be construed to be consistent with [the Rules of Bankruptcy Procedure] and the Code." *Id.* fn.3

The trustee's reading, the *Scott* court wrote, would require rejection of a portion of the form as "incorrectly designed," based upon a reading of the statute that failed to harmonize its various components. Because § 707(b)(2)(A)(iii) "specifically addresses how secured debt payments are to be calculated," the trustee's reading of the "notwithstanding" sentence goes too far. The Official Forms, however, synthesize the various requirements of the statute. *Id.* at 745.

This court agrees with the *Scott* court's analysis and also with the views expressed in *Collier*, which are that reading the provision to preclude a debtor from claiming housing or transportation ownership expense on grounds that they constitute payments for secured debt, and therefore are excluded by the "notwithstanding" sentence, goes too far. Arguments based on the "notwithstanding" sentence do not withstand "textual or policy scrutiny," *Collier* states, because the language of that sentence

> means simply what it says: Although the IRS Other Necessary Expense standards permit debtors to make payments on other secured and unsecured debts, such payments are not allowed as part of the means test use of the IRS standards. *The amounts deducted under the transportation ownership allowances are not payments for debts. They are the "amounts specified" by the allowance. It is more logical to conclude that the language prevents secured debt payments, which are allowed under a separate provision of the means test, from being double counted as part of the application of the IRS standards.* Moreover, the argument that the language means the transportation ownership allowance cannot be allowed for a debtor with a car loan proves too much. *Under the Code's definition of "debt," if no payment for any item that constitutes a debt were permitted under the local standards, debtors could not deduct any expenses for housing or transportation if they had a housing*

13

> *lease or an automobile lease, since an obligation on a prepetition lease is undisputably a debt.*

6 *Collier on Bankruptcy* ¶ 707.04[3][c] at 707-32 to 707-33 (16th ed., Alan J. Resnick & Henry Sommer, eds.) (emphasis added).

Thus, the better interpretation of the statutory language, which aligns completely with Official Form 22A as drafted and completed by the debtor here, is simply to recognize that the National and Local Standards addressed in clause (ii) include no "debt" because said "debt" is dealt with elsewhere: in clauses (iii) and (iv). So, in implementing the directives set out in clause (ii), the forms expressly deduct the total average monthly payment made by a debtor for "all mortgages and other debts secured by your home," and for amounts contractually due to each secured creditor for debts secured by the vehicles for which a debtor claims an ownership expense; again, these are accounted for in clause (iii). *See* Official Form 22A-2 lines 9a-9c, lines 13a-13f. An example of this math in action is set out quite plainly in *In re Sisler*, where the court considered vehicle deductions in a chapter 13 case using Official Form 22C:

> Line 28 on Form B 22C contains a calculation: the IRS's Local Transportation Standards for Ownership Costs for the applicable census area - the average monthly payment of any debt on the vehicle = net ownership expense. Net ownership expense is what is listed on Line 28. The reason that the average monthly payment is subtracted from the IRS's Local Standards is because debt expenses are allowed as a separate deduction on Line 47 and 48 of Form B 22C. Therefore, if the Local Standards were not reduced by any applicable debt payments on Line 28, the debt payments would be deducted twice, leading to an inaccurate calculation of net disposable income.

*Sisler*, 464 B.R. 705, 706 fn. 4 (Bankr. W.D. Va. 2012).

That is exactly how the debtors arrived at their deductions in this case: By beginning with the applicable Local Standards for housing and for vehicle ownership and lease expenses, deducting from those amounts the average monthly payments due to secured creditors for their home and two

vehicles, and then claiming the difference between those amounts as their housing and vehicle ownership expense. As the district court wrote in *Musselman v. eCast Settlement Corp. (In re Musselman)*, 394 B.R. 801 (E.D.N.C. 2008): "Having considered carefully the language of the statute and thoroughly reviewed relevant case law, this court is persuaded that a debtor who has housing or transportation expenses may include the full amount provided by the IRS Local Standards for those expense categories, even when his actual expenses are less than those amounts." *Id.* at 816 (discussing the "significant divide" among courts regarding application of the Local Standards; though there are "only two basic outcomes, numerous distinct rationales and nuances arise within both lines of cases").

Although some other courts have construed the "notwithstanding sentence" more broadly, this court perceives no grounds upon which it can or should do so. In sum, § 707(b)(2)(A)(i) directs that the amounts by which a debtor's current monthly income is to be reduced must be "determined under *clauses (ii), (iii) and (iv)*, from which this court concludes that by the statute's own self-referential definition, each of those subsections is a "clause" within the meaning of this particular statute and, significantly, the three of them together determine the nature and extent of reductions. In *Ransom*, the petitioner took this view: "The car-ownership deduction cannot comprise *only* loan and lease payments, Ransom contends, because those payments are *always* debts." To this, the Court responded:

> Ransom ignores that the "notwithstanding" sentence governs the full panoply of deductions under the National and Local Standards and the Other Necessary Expense categories. We hesitate to rely on that general provision to interpret the content of the car-ownership deduction because Congress did not draft the former with the latter specially in mind; any friction between the two likely reflects only a lack of attention to how an across-the-board exclusion of debt payments would correspond to a particular IRS allowance.

15

*Ransom*, 562 U.S. at 77.

The Court did not consider the question further because the petitioner made no payments on his car. As the Court explained, "we need not and do not resolve how the 'notwithstanding' sentence affects the vehicle-ownership deduction when a debtor has a loan or lease expense." *Id.* at 78 n.11. Nor does the court believe that *Ransom*, considered in a more general sense, can support the BA's position. First, the court notes that the *Ransom* Court did not consider the exact issue currently before this court, although the parties presented the question:

> The parties and the Solicitor General as *amicus curiae* dispute the proper deduction for a debtor who has expenses that are *lower* than the amounts listed in the Local Standards. Ransom argues that a debtor may claim the specified expense amount in full regardless of his out-of-pocket costs. ... The Government concurs with this view, provided (as we require) that a debtor has *some* expense relating to the deduction. ... FIA, relying on the IRS's practice, contends to the contrary that a debtor may claim only his actual expenditures in this circumstance. ... We decline to resolve this issue. Because Ransom incurs no ownership expense at all, the car-ownership allowance is not applicable to him in the first instance. Ransom is therefore not entitled to a deduction under either approach.

*Id.* at 76 n.8.[5]

---

[5] In *In re Miranda*, the bankruptcy court for the district of Puerto Rico discussed, at length, the rationale underlying the Government's position in *Ransom*:

> The Government notes that Section 707(b)(2)(A)(ii)(I) "strikes a balance between precision and ease of administration by requiring a debtor who invokes the deduction to establish the existence, but not the exact amount" of a certain expense, [and] in this particular case it was the vehicle ownership expense. Brief for the United States as *Amicus Curiae* at 20 (remainder of citation omitted). This supports Congress' policy behind the means test which was the uniform application of a bright-lien test, which was more important than accuracy and which limited judicial discretion in the application of the same.

*Miranda*, 449 B.R. 182, 191-92 (Bankr. D.P.R. 2011) (citing cases).

The court went on to outline the Government's discussion of its second rationale, with respect to IRS statements regarding its collection policies and methodologies, the upshot of

The Court did, however, discuss the parameters of what makes an expense deduction "applicable" to a particular debtor; i.e., what would make a deduction "appropriate, relevant, suitable or fit." *Id.* at 69. Here, the court again agrees with Judge Grandy's analysis in *Scott*: "In light of the *Ransom* decision, which only authorizes a debtor to claim a vehicle ownership expense deduction if they have a vehicle payment, it seems ridiculous that the Court even undertook to decide what is 'applicable' if that section is not even relevant. The Court did not 'throw out' lines 28 and 29, as the Trustee suggests that we do." *Scott*, 457 B.R. at 745-46. The court finds nothing in *Ransom* to suggest a new, more restrictive approach to the standardized operation of the means test.

Instead, this court has more confidence in the majority view. *See, e.g., In re Uhlig*, 504 B.R. 916, 920 (Bankr. E.D. WI. 2014) ("Courts have consistently held that above-median income chapter 13 debtors are entitled to take the standard deductions, notwithstanding their actual expenses."); *In re Christianson*, 2015 WL 4761265 (Bankr. D. Or. 2015) (chapter 13 debtors may claim full Local Standards expense although actual car payments lower; neither *Hamilton v Lanning* nor *Ransom* require a different result); *In re Miranda*, 449 B.R. 182 (Bankr. D. Puerto Rico 2011) (same; *Hamilton v. Lanning* "dealt with the income side of the formula, not the expense side," and *Ransom* is consistent with debtor claiming standardized exemptions despite lower actual costs); *In re Egbert*,

---

which is that the Government believes the position it takes in the amicus brief to be consistent with the statute and IRS policies, and also to be "in conformity with the consensus view among the bankruptcy courts and with the view of the Advisory Committee on the Federal Rules of Civil Procedure." *Id.* at 192-93. Ultimately, the *Miranda* court wrote, it "agrees with the rationale and analysis taken by the Government in *Ransom* and determines that a debtor who has expenses lower than the Local Standards may claim the full amount specified in the standards." *Id.* at 194 & 191-94.

17

384 B.R. 818 (Bankr. E.D. Ark. 2008) (debtors may take standard housing and vehicle deductions despite fact that average monthly payments were lower than average).

Finally, the court observes that its conclusions here are in keeping with the policy-based underpinnings of the Bankruptcy Code and, in that respect, avoid what the court believes would be the unfair consequences that would ensue from the interpretation of the statute urged by the BA. As the court observed in *Denzin*, discussed earlier, the § 707(b)(2)(A) means test for chapter 7 eligibility "is designed to distinguish the honest but unfortunate debtor who is entitled to chapter 7 relief from the honest but less unfortunate debtor who is capable of repaying all or part of his debts and who is not entitled to chapter 7 relief." *Denzin*, ___ B.R. ___, 2015 WL 4666023, *2. In contrast, it is § 707(b)(3), which requires that the petition be filed in good faith and that the totality of the circumstances not demonstrate abuse, that constitutes a "dynamic, customized test" and facilitates the BA's examination of the particulars of a debtor's circumstances. *Id.*, ___ B.R. ___, 2015 WL 4666023, *3. It appears to the court that if the applicable standards were construed as the BA urges, then frugal debtors such as the Jacksons, who *already* spend conservatively for their home and vehicles, would be unfairly penalized in comparison to other chapter 7 debtors who spend far more. The means test simply is not designed to account for specifics in these categories: "Congress intended the means test to *approximate* the debtor's reasonable expenditures on essential items," the *Ransom* Court explained. 562 U.S. at 70. Based on the information provided by debtors in compliance with that means test, it appears to the court that the Jacksons are precisely the sort of honest but unfortunate debtors chapter 7 is intended to serve.

## CONCLUSION

For the foregoing reasons, the court concludes that the Jacksons' applicable monthly expenses for home and vehicle ownership costs, as recorded on Lines 9c, 13c, and 13e of Official Form 22A-2, appropriately and accurately reflect expenses the Jacksons were required to report under § 707(b)(2)(A). The presumption of abuse does not arise, and the BA's motion to dismiss under § 707(b)(2) therefore is **DENIED**.

**END OF DOCUMENT**