**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-1358

MARJORIE K. LYNCH, Bankruptcy Administrator for the Eastern District of North Carolina,

        Appellant,

    v.

GABRIEL LEVAR JACKSON; MONTE NICOLE JACKSON,

        Debtors – Appellees,

    and

A. SCOTT MCKELLAR,

        Trustee.

-------------------------------------------

NATIONAL ASSOCIATION OF CONSUMER BANKRUPTCY ATTORNEYS,

        Amicus Supporting Appellees.

Appeal from the United States Bankruptcy Court for the Eastern District of North Carolina, at Raleigh. Stephani W. Humrickhouse, Chief Bankruptcy Judge. (15-01915-5-SWH)

Argued: December 6, 2016                  Decided: January 4, 2017

Before MOTZ, KEENAN, and THACKER, Circuit Judges.

Affirmed by published opinion.  Judge Thacker wrote the opinion, in which Judge Motz and Judge Keenan joined.

---

**ARGUED**: Brian Charles Behr, OFFICE OF THE BANKRUPTCY ADMINISTRATOR, Raleigh, North Carolina, for Appellant.  Robert Lee Roland, IV, LAW OFFICES OF JOHN T. ORCUTT, P.C., Raleigh, North Carolina, for Appellees.  **ON BRIEF:** Tara Twomey, J. Erik Heath, NATIONAL CONSUMER BANKRUPTCY RIGHTS CENTER, San Jose, California, for Amicus Curiae.

---

THACKER, Circuit Judge:

Gabriel and Monte Jackson filed a petition for Chapter 7 bankruptcy relief. Marjorie Lynch, the Bankruptcy Administrator for the Eastern District of North Carolina,[1] moved to dismiss the case as an abuse because the Jacksons used the National and Local Standard amounts[2] for certain categories of expenses rather than the actual amount of their expenses, which were less than the standardized amounts. The Bankruptcy Court for the Eastern District of North Carolina denied the Bankruptcy Administrator's motion to dismiss. The Bankruptcy Administrator and the Jacksons filed a joint request for permission to directly appeal to this Court.

We granted the appeal as to the following question: whether 11 U.S.C. § 707(b)(2) permits a debtor to take the full National and Local Standard amounts for expenses even though the

---

[1] The Bankruptcy Administrator "may raise and may appear and be heard on any issue in any case under title 11, United States Code, but may not file a plan pursuant to section 1121(c) of such title." Judicial Improvements Act of 1990 § 317(b), Pub. L. No. 101-650, 104 Stat. 5089 (1990). The Bankruptcy Administrator acts to prevent fraud and abuse in bankruptcy proceedings. See 11 U.S.C. § 704(b); H.R. Rep. No. 95-595, at 88, reprinted in 1978 U.S.C.C.A.N. 5963, 6049.

[2] The National and Local Standards are uniform amounts determined by the Internal Revenue Service that reflect typical spending for certain household expenses. The National and Local Standards are used to determine whether a debtor has sufficient income to repay their creditors or if the debtor is entitled to bankruptcy relief.

3

debtor incurs actual expenses that are less than the standard amounts. We conclude that debtors are entitled to the full National and Local Standard amount for a category of expenses if they incur an expense in that category.

I.

On April 6, 2015, the Jacksons filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of North Carolina. Because the Jacksons earn more than the median income for a family of four in North Carolina, they had to complete a means test. See 11 U.S.C. § 707(b). The means test is a standardized mathematical formula used to determine the amount of a debtor's disposable income. If the means test reveals disposable income above a certain level, then the Chapter 7 petition will be presumed to be an abuse of the bankruptcy code and a debtor will not be allowed to proceed in Chapter 7. See id.

The Jacksons submitted their means test on July 2, 2015, using Official Form 22A-1 and 22A-2.[3] Form 22-A-2 states:

> The Internal Revenue Service (IRS) issues National and Local Standards for certain expense amounts. Use these amounts to answer the questions in line 6-15 . . . . Deduct the expense amounts set out in lines 6-15 regardless of your actual expenses. In

---

[3] The official forms are promulgated by the United States Judicial Conference pursuant to 28 U.S.C. § 2075.

4

> later parts of the form, you will use some
> of your actual expenses if they are higher
> than the standards.

J.A. 120 (emphasis supplied).[4]

Based on the instructions, the Jacksons included the Local Standard mortgage expense of $1,548.00. The Jacksons' actual mortgage expense was $878.00. Likewise, the Jacksons included the Local Standard expense of $488.00 for each of their two cars -- a 2003 Chevrolet Tahoe ("Chevy") and a 2008 Dodge Magnum ("Dodge"). The Jacksons' actual payments were $111.00 for the Chevy and $90.50 for the Dodge. The Bankruptcy Administrator does not challenge whether the Jacksons actually followed the instructions provided in the official forms.

Nevertheless, on June 3, 2015, the Bankruptcy Administrator moved to dismiss the Jacksons' Chapter 7 petition as abusive. The Bankruptcy Administrator argued that the instructions on the official forms were incorrect and that a Chapter 7 debtor was "limited to deducting their actual expenses or the applicable National or Local Standard, whichever is less." J.A. 132. The Jacksons argued that the statute was "unambiguous" and specifically directed debtors to use the full National and Local Standard expense amounts. Id. at 137.

---

[4] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

5

On September 10, 2015, the bankruptcy court denied the Bankruptcy Administrator's motion to dismiss. The bankruptcy court "conclude[d] that the debtors' use of the IRS Local Standard allowances for their housing and vehicle exemptions on Form 22A-2 comports with . . . the plain language" of the statute. In re Jackson, 537 B.R. 238, 239-40 (Bankr. E.D.N.C. 2015).

On September 23, 2015, the Bankruptcy Administrator filed a notice of appeal, and, then, on October 21, 2015, the parties jointly filed a request with the bankruptcy court for a certification to appeal directly to the Fourth Circuit. On October 24, 2015, the matter was transferred from the bankruptcy court to the district court. See Fed. R. Bankr. P. 8006(b).

No action was taken by either party or the bankruptcy or district courts for over two months. On January 5, 2016, the Bankruptcy Administrator moved for a status conference to "determine what steps [were] remaining in order to complete the certification." J.A. 323. On February 12, 2016, despite not having authority to directly certify the question, the bankruptcy court issued a recommendation that a direct appeal from this case be granted regardless of the parties' failure to file "a request for permission to take direct appeal with the circuit clerk as called for by Fed. R. Bankr. P. 8006(g)." Id. at 329.

6

The parties filed their petition for permission to appeal with this court, and we granted the petition on March 31, 2016, and ordered the parties to address timeliness pursuant to 28 U.S.C. § 158(d)(2)(A).

II.

We conclude that 28 U.S.C. § 158(d)(2)(A) does not create a jurisdictional time bar, and, therefore, the parties' delay in filing did not deprive this court of its jurisdiction.[5] A time bar is jurisdictional "only if Congress has clearly

---

[5] However, jurisdictional timeliness is a separate issue from procedural timeliness, and this case is procedurally untimely. To appeal directly to the court of appeals, a party must first obtain a certification. The certification occurs when the party has filed a notice of appeal, the notice of appeal has become effective, and the parties file a certification with the court where the matter is pending. See Fed. R. Bankr. P. 8006(a)(1)-(3). Here, the notice of appeal was filed and became effective on September 23, 2015. See Fed. R. Bankr. P. 8002(a)(1). The parties filed their certification on October 21, 2015. Pursuant to Federal Rule of Bankruptcy Procedure 8006(g), the parties had 30 days from October 21, 2015, to file a petition with this court and failed to do so rendering this matter procedurally untimely.

Given that this is a joint appeal, it is unsurprising that neither party has raised timeliness as an affirmative defense. This court retains the authority to raise a procedural bar sua sponte "where a defense substantially implicates important nonjurisdictional concerns that transcend the interests of the parties to an action." Hines v. United States, 971 F.2d 506, 508 (10th Cir. 1992); see Day v. McDonough, 547 U.S. 198, 202 (2006) (holding a court could sua sponte raise timeliness and dismiss a habeas petition). Because the delay in proceedings resulted from the complexity and confusing nature of the bankruptcy code and not an act of bad faith by the parties, we choose not to raise the time-bar sua sponte.

7

stated that it is." Mussachio v. United States, 136 S. Ct. 709, 717 (2016) (citation and internal quotation marks omitted). Section 158(d)(2)(A) gives this court jurisdiction to hear a direct appeal from a bankruptcy court, and it "has no time limit provided that all the parties have jointly certified that the case satisfies one of [the] specified conditions." In re Schwartz, 799 F.3d 760, 765 (7th Cir. 2015). The "specified conditions" in § 158(d)(2)(A) are:

> (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;
>
> (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or
>
> (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken.

Here, the parties certified that there is a split between bankruptcy courts within the Eastern District of North Carolina over the proper interpretation of 11 U.S.C. § 707(b)(2), which satisfies § 158(d)(2)(A)(ii). Therefore, we have jurisdiction to hear the appeal.

### III.

Pursuant to 11 U.S.C. § 707(b)(1), a court "may dismiss a case . . . if it finds that the granting of

8

[bankruptcy] relief would be an abuse" of the bankruptcy process. Section 707(b)(2)(A)(i) provides:

> the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of: (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $7,7001, whichever is greater; or (II) $12,8501.[6]

In turn, clause (ii), § 707(b)(2)(A)(ii)(I), states:

> the debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides . . . .

In Ransom v. FIA Card Servs., 562 U.S. 61 (2011), the Supreme Court was tasked with interpreting 11 U.S.C. § 707(b)(2)(A)(ii)(I). It held that an expense is "applicable," as used in § 707(b)(2)(A)(ii)(I), "only if the debtor will incur that kind of expense during the life of the plan." Ransom, 562 U.S. at 70. However, the Court expressly declined to reach the issue of "the proper deduction for a debtor who has expenses that are lower than the amounts listed in the Local Standards." Id. at 75 n.8 (emphasis in original).

---

[6] The Judicial Conference of the United States adjusts the actual dollar amounts every three years to account for inflation. See 11 U.S.C. § 104.

9

This court must now address the issue that the Supreme Court declined to reach in Ransom. Based on the plain language of the statute, we hold that a debtor is entitled to deduct the full National and Local Standard amounts even if they have actual expenses below the standard amounts.

We start as we must with the plain language of the statute because "when the statute's language is plain, the sole function of the courts -- at least where the disposition required by the text is not absurd -- is to enforce it according to its terms." Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000) (citation and internal quotation marks omitted). Moreover, language is not read in isolation, rather "[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." Davis v. Mich. Dep't of Treasury, 489 U.S. 803, 809 (1989).

Here, the language is quite clear. Once an expense is incurred, then "[t]he debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards." 11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphases supplied). A debtor is entitled to take the full amount of the National and Local Standards if they incur an expense in that category.

10

This interpretation gives full effect to Congress's decision to use different words in the statute. Section 707(b)(2)(A)(ii)(I) uses both "applicable" and "actual" in the same sentence, and "[d]ifferent words used in the same . . . statute are assigned different meanings." 2A N. Singer, Sutherland on Statutes and Statutory Construction § 46:6 (7th ed. 2007). The first clause of the first sentence of § 707(b)(2)(A)(ii)(I) provides that a debtor's monthly expenses are the "<u>applicable</u> monthly expense amounts specified under the National Standards and Local Standards," as opposed to the second clause of that sentence, which specifies expenses are "the debtor's <u>actual</u> monthly expenses." Because Congress chose to use two different words in the same sentence, the words must mean something different. As used in § 707(b)(2)(A)(ii)(I), "applicable monthly expenses" entitles a debtor to the full National and Local Standard amounts, and "actual monthly expenses" only entitles a debtor to expenses incurred.

Moreover, interpreting "applicable" to mean "actual," as the Bankruptcy Administrator urges, would create an absurd result: punishing frugal debtors. If § 707(b)(2)(A)(ii)(I) only allows for deductions up to the amount of actual expenses, then a debtor would be incentivized to spend up to the amount of the National and Local Standards. A frugal debtor, who spent less than the National and Local

11

Standard amounts, would be punished and receive less protection than a prolific debtor who spent up to or beyond the cap. Readings of a statute that "produce absurd results are to be avoided." Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 575 (1982). Therefore, we hold a debtor is entitled to the full National and Local Standard amounts for any category of expense in which they incur a cost.

IV.

For the foregoing reasons, the judgment of the bankruptcy court is

AFFIRMED.